EMPIRE TRUST COMPANY, as Executor, etc., of JOHN C. HATZEL, Deceased, Plaintiff, v. HARRY J. KURRUS and Others, Defendants.

First Department, June 18, 1929.

*Jacob H. Shaffer* of counsel [*Shaffer & Pierson,* attorneys], for the plaintiff.

*Joseph Day Lee,* for the defendants.

PROSKAUER, J. The parties submit a controversy upon an agreed statement of facts. The plaintiff's testator, Hatzel, was a stockholder of a close corporation known as Hatzel & Buehler, Inc. The defendants were the other stockholders. At the time that the corporation was formed to take over the business theretofore owned by Hatzel, an agreement was made, which, among other things, provided for the disposition of the stock of any one of the parties in the event of his death. In so far as here material, it was agreed: " The party of the first part [Hatzel], however, agrees that upon his death  *  *  *  his stock in the company *  *  *  shall be offered for sale to the parties of the second part, at a price to be fixed as hereinafter set forth, and that the parties of the second part shall have ten days after the making of said offer within which to accept the same, and one year thereafter to complete the purchase of the said stock.  *  *  *  The price, however, as fixed by said offer shall bear interest from the date of the making thereof, until the time of the completion of the purchase price by the parties of the second part, as above provided." The agreement also contained a provision fixing the salary of Hatzel at $3,600 a year and the salary of each of the parties of the second part at $3,000 a year. It provided also for a varying pooling of dividends. Thus, all dividends declared at the end of the first year were to be pooled and nine-twenty-fourths of the amount thereof was to be paid to Hatzel and five-twenty-fourths to each of the parties of the second part. The same scheme of pooling dividends, with differences as to proportion, was provided for subsequent years. By the 8th paragraph of the agreement it was provided that upon a sale of the stock under any of the terms of the agreement providing for sale, the price should be the par value of said stock, plus such proportion of the undivided profits of the company as said stock would be entitled to as dividends under the pooling arrangement above provided, if dividends were declared in the year in which the said stock was offered for sale. At the time of his death, Hatzel was the owner of 478 shares of the

capital stock of the corporation. He died on May 25, 1928. Letters testamentary were issued to the plaintiff on June 20, 1928. No offer to sell the stock of the estate to the defendants, the parties of the second part named in the agreement, was made by the plaintiff, however, until the 7th day of November, 1928. The defendants accepted the offer within ten days.

The parties are in complete agreement that the defendants should buy the plaintiff's stock and that the price should be fixed as provided in paragraph 8.

The dispute concerns the date as of which the stock should be valued. The plaintiff contends that it should be valued as of the day the offer was made; the defendants that it should be valued as of the date of Hatzel's death. If the plaintiff is right, the decedent's stock would get the benefit of the profits apportionable to Hatzel's stock earned during the interim between his death in May and the offer to sell in November. Such share of these earnings, fixed in accordance with paragraph 8, are approximately $26,000. The value of the stock as of the date of the death was $78,091.66. The value of the stock as of the date of the offer, November 7, 1928, was $104,385.52.

The plaintiff's interpretation of the agreement is both unwarranted and unfair. The 6th paragraph of the agreement required Hatzel's executors to offer the stock " upon his death." That was the event which determined their obligation to make the offer and inferentially the time as of which it was to be made. The language of the agreement itself carries the implication that the offer was to be made as of the date of death and this implication is abundantly fortified by a consideration of the relations of the parties under the other terms of the agreement. While the parties were trading under a corporate form, they were really in a non-technical sense copartners. It was contemplated that service to the corporation should be rendered by each of the stockholders and that the profits were to be divided, not in proportion to the stock holdings, but in proportion to the value which the parties by agreement assigned respectively to the positions of one another. In this aspect it would be unjust to permit the decedent's estate to take earnings accruing subsequent to the death as part of the purchase price of the stock. During his lifetime his share of the earnings did not depend solely upon his proportionate stock ownership. The earnings were divided upon an agreed ratio and it is obvious that in fixing this ratio the parties clearly had in mind the service rendered to the corporation by every stockholder respectively. It could not have been intended, therefore, that the estate of the deceased stockholder, of whose services the corporation was deprived, could

secure the decedent's share of profits earned after his death. The defendants were not required to work for the decedent's estate. They had a right to buy his stock for what it was worth on the day of his death.

One clause of the agreement militates somewhat against this construction. In the 6th paragraph it is provided that interest on the purchase price should run from the date of the making of the offer. The defendants express a willingness to pay interest from the date of the death. The plaintiff very properly urges, however, that the defendants may not by this concession avoid the force of this clause in the interpretation of the agreement. And they are right in contending that, save for the defendants' concession, interest would run from the date of the offer under the plain and unambiguous language of the agreement. Nevertheless this fact does not invalidate the defendants' construction of the agreement. It was evidently contemplated that the offer should be made promptly upon the qualification of the executor or administrator of the decedent. The lapse of time between the death and such qualification was and would normally be negligible. The representatives of the decedent always had it in their power to start the running of interest promptly by making the offer promptly, and the clause as to interest may well be viewed as an agreed incentive to the decedent's representatives to act expeditiously in making the offer.

Judgment should, therefore, be entered herein in accordance with the prayer of the defendants.

DOWLING, P. J., and MERRELL, J., concur; FINCH and McAVOY, JJ., dissent.

FINCH, J. (dissenting). The parties themselves have expressly provided how the stock shall be valued, and we are not at liberty to make a new contract for them based upon the assumption that ordinarily in a partnership the share of a partner dying or withdrawing is valued as of the date of such event. According to the terms of the contract the plaintiff is entitled to judgment. The 6th clause of the agreement provides that upon the death or withdrawal of the party of the first part (Hatzel) from the corporation, his stock in the company shall be offered for sale to the defendants at a price to be fixed as " hereinafter set forth," being the 8th clause of the agreement, and that the parties of the second part (the defendants herein) shall have ten days after the making of this offer within which to accept the same, and one year thereafter to complete the purchase of the stock. It is true that the death is the event which determines that the defendants may exercise

their option, but the death does not also mark the time for fixing the sales price, as that is expressly named in the contract as the date when the offer is made. The defendants under the contract are given the right to put the plaintiff in default and to compel an offer to be made to sell the stock, by signifying their exercise of the option and making a tender to pay for the stock, or defendants can wait until the offer is made voluntarily by the plaintiff. If the defendants wait for the offer to be made they are given ten days thereafter within which to make up their minds whether to accept or reject, and one year within which to pay therefor. Interest also is to run only from the date of the offer. The contract also provides "In case the parties of the second part shall neglect or refuse to accept said offer, as above provided, then the party of the first part shall be released from any other provisions of said contract restricting the sale by him of his said stock in said company of Hatzel & Buehler, Inc." Thus the rights of the parties as written by the contract are all to be determined as of a date to be fixed by the exercise by the defendants of the option to buy the stock, which is named in the contract as the date of the making of the offer. If this is not the construction of the contract, then one party (the plaintiff) is bound and the other parties (the defendants) are free. If, as the defendants contend, the offer was *ipso facto* made as of the death of Katzel, then the defendants should have indicated their acceptance of the offer and have made their tender, which would have fixed the price of the stock as of that time within ten days of Hatzel's death or at the least within ten days of June 20, 1928, when the executors were appointed. It is not reasonable that the defendants should stand by and wait for the offer of plaintiff and be free during this time to exercise their option or not and then claim that the stock should be valued at a period long prior to the exercise of their option. Furthermore, if the offer to sell determines the commencement date of the accrual of interest, does not the same offer determine the date for the valuation of Hatzel's interest in the corporation? Why the "offer" in one instance and not in the other, when the contract uses the same phraseology as to both? From a consideration of these facts it is apparent that the offer to sell is not an idle formality but the indispensable act looking towards the acceptance or rejection by the defendants of their option to buy, essentially to fix the rights of the parties and the privileges accorded to the defendants.

The contract further expressly provides how the price of the stock is to be fixed. If the contract had provided that the stock should be valued as of the date of the death or withdrawal, or had

been silent on the subject, a different situation obviously would have existed. Instead the contract provided in paragraph 8 that the price to be paid should be the par value of the stock, plus such proportion of the undivided profits of the company to which the stock would be entitled " if dividends were declared in the year in which said stock was offered for sale." Had the intention of the parties been otherwise, the language of the contract would have been read if dividends were declared in the year in which John C. Hatzel died or withdrew from the company. This provision of the contract thus covers the sales price and fixes the sum to be paid, namely, the par value of the stock (which is unchangeable), plus the share of undivided profits in the year in which the offer to sell the stock is made.

This construction of the agreement also seems to accord with what is most fair and reasonable as between the parties, for it prevents the defendants from speculating in the stock at the expense of the plaintiff, particularly during the time it takes for a representative of the deceased to be appointed and also if there should be a contest of the will, which would cause delay. Thus, when the stock is earning money, as in the case at bar, the defendants by this construction are prevented from obtaining this large increment of value without paying for it. Where in the agreement is to be found the authority for the unjust and inequitable position that the plaintiff, as executor, is not entitled to any share of the undivided profits earned on decedent's investment between the date of the death of Hatzel on May 25, 1928, and the date of the acceptance by defendants of the offer on November 13, 1928, when the defendants any time subsequent to the death could have compelled the making of the offer by signifying their intention to exercise their option? If the contention of the defendants is correct, then is the plaintiff penalized and without any discoverable reason made to lose its share (amounting to $26,293.86) of the increase of the undivided profits of the corporation for the six months between the date of the death of the decedent and the acceptance of the offer of sale.

Plaintiff is entitled to judgment in accordance with the submission.

McAvoy, J., concurs.

Judgment directed in accordance with the prayer of the defendants. Settle order on notice.